**GERSHMAN INVESTMENT CORPORA-
TION, Plaintiff-Respondent,**

v.

**John C. DANFORTH, Attorney General,
Defendant-Appellant.**

**No. 58747.**

Supreme Court of Missouri,
En Banc.

Dec. 16, 1974.

Gideon H. Schiller, Ackerman, Schiller & Schwartz, Clayton, for plaintiff-respondent.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for defendant-appellant.

DONNELLY, Chief Justice.

This is a declaratory judgment action. Gershman Investment Corporation seeks a declaration: (1) that two opinions of the Attorney General (in which the Attorney General expressed his belief that § 362.195, RSMo 1969, V.A.M.S., is unconstitutional) are erroneous and should be ordered withdrawn; and (2) that § 362.195, supra, is constitutional. The trial court held for

Gershman Investment Corporation, and an appeal was taken to the St. Louis District of the Missouri Court of Appeals. The case was transferred to this Court, before opinion, by order of this Court. We decide the case here the same as on original appeal. Mo.Const. Art. V, § 10, V.A.M.S.

The matters in issue were before this Court in Gershman Investment Corporation v. Danforth, 475 S.W.2d 36 (Mo.banc 1971). The essential facts were set forth therein as follows:

"The parties filed an agreed statement of facts. The following facts taken therefrom will disclose the situation which brought about the filing of this suit. The principal function of the Federal Housing Administration is to provide government insurance on real estate loans. There is a large number of 'FHA approved mortgagees' in Missouri and it is estimated that from 25 to 50% of the loans made in this state are insured by FHA. FHA regulations determine the maximum interest rate which a lender is permitted to charge on an FHA insured loan. From 1961 to and including 1969 the maximum rate varied from 5¼% to 7½%. Plaintiff, since 1955, has been operating in St. Louis County, Missouri, in the mortgage banking business as an FHA approved mortgagee. Its manner of operation is to make FHA insured loans in this state and then sell them to various purchasers outside the State of Missouri, such as insurance companies, banks, and other investors.

"Section 362.195 provides, among other things, that no law of this state limiting interest rates upon loans shall apply to loans made pursuant to certain designated sections which relate to FHA loans. The defendant Attorney General, in opinions dated December 18, 1969, and January 9, 1970, stated that § 362.195, when considered in connection with § 362.180, is unconstitutional because it attempted to set up a particular class of lenders exempt from the usury statutes in violation of Art. 3, § 44 of the Missouri Constitution, V.A.M.S., and that any loan made at a rate of interest in excess of 8% would violate the Missouri usury statutes. On January 5, 1970, the maximum FHA rate was increased to 8½%. The parties agree that there has been no judicial determination as to the constitutionality of § 362.195, and that the opinions of the Attorney General in respect thereto received widespread publicity throughout the FHA mortgage market; that as a direct result of said opinions many investors have declined to purchase FHA loans originating in Missouri because they were able to purchase such loans originating in other states bearing interest at the rate of 8½%, whereas, any Missouri loans bearing more than 8% were of doubtful validity in view of defendant's opinions, and therefore the market for Missouri FHA insured loans was substantially reduced."

The Court noted that the maximum allowable FHA interest rate no longer exceeded 8%, held that the case had become moot, and reversed and remanded with directions to the trial court to dismiss the case.

On July 1, 1974, the present case was filed and was decided on stipulated facts by the trial court, which: (1) declared §§ 362.180 and 362.195, RSMo 1969, constitutional; (2) declared the opinions of the Attorney General erroneous; and (3) ordered them withdrawn. We take judicial notice of the substantial increase in interest rates during the years 1973 and 1974, so that FHA loans at rates in excess of 8% are now authorized.

The Attorney General asserts that this case should be dismissed because there is no justiciable controversy. He states in his brief: "Attorney Generals' opinions are not law. Citizens are free to test the opinions in court. Public officials usually rely on these opinions and citizens often do so, also, but this does not change their status."

Section 27.040, RSMo 1969, deals with the matter of the giving of opinions by an Attorney General. It reads as follows:

"When required, he shall give his opinion, in writing, without fee, to the general assembly, or to either house, and to the governor, secretary of state, auditor, treasurer, commissioner of education, grain warehouse commissioner, superintendent of insurance, the state finance commissioner, and the head of any state department, or any circuit or prosecuting attorney upon any question of law relative to their respective offices or the discharge of their duties."

In Fisher v. City of Independence, 350 S.W.2d 268, 271 (Mo.App.1961), transf'd, 370 S.W.2d 310 (Mo.banc 1963), the Kansas City Court of Appeals said:

"While the Attorney General's opinions are entitled to great weight, are persuasive and should be followed, especially by state officials, boards and commissions, unless and until a proper court rules otherwise, such opinions do not become the law of the land."

▮ This statement, if considered a *general* rule of law, is erroneous except insofar as it holds that opinions issued by an Attorney General "do not become the law of the land." An Attorney General is a member of the Executive Department (Mo. Const. Art. IV, § 12). He has no judicial power and may not declare the law. His opinions may be persuasive to some and not to others. In any event, the judicial power of the state is vested in the courts designated in Mo.Const. Art. V, § 1. The courts declare the law.

In State ex rel. Wiles v. Williams, 232 Mo. 56, 133 S.W. 1 (Mo.banc 1910), this Court held that an opinion of the Attorney General, to the effect that a statute was unconstitutional, was sufficient to give a county treasurer standing to *raise* the question of the constitutionality of the statute. However, an Attorney General may not *declare* a statute unconstitutional.

This power is reserved to the courts by the Constitution.

In City of Joplin v. Jasper County, 349 Mo. 441, 443, 161 S.W.2d 411, 412, 413, this Court, speaking of the Declaratory Judgments Act ( §§ 527.010–527.140, RSMo 1969), said:

"The act furnishes a particularly appropriate method for the determination of controversies relative to the construction and validity of statutes and ordinances. . . . But, when it is attempted to be so used and a judicial declaration is sought the court must be presented with a justiciable controversy— one appropriate for judicial determination—a case admitting of specific relief by way of a decree or judgment conclusive in character and determinative of the issues involved. . . . There must be a sufficiently complete state of facts presenting issues ripe for determination before a court may declare the law. 'A mere difference of opinion or disagreement or argument on a legal question affords inadequate ground for invoking the judicial power.' Borchard, Declaratory Judgments, p. 77; State ex rel. La Follette v. Dammann, 220 Wis. 17, 264 N.W. 627, 103 A.L.R. 1089."

Respondent urges that we are presented with a justiciable controversy in this case. Respondent acknowledges the general rule that courts do not render advisory opinions, but contends in its brief:

"Since the Attorney General stipulated as to the facts in the trial court which acknowledged injury to the plaintiff resulting from the Attorney General's opinions, which obviously precipitated this controversy, we can only conclude that the Attorney General is now asking this Court to rule that the Attorney General's opinions cannot create any justiciable controversy whether the opinions are right or wrong. If this is the Attorney General's argument (and this is the only conclusion to which one can come), we must state that the Attorney General's position can lead to un-

**36**

foreseen mischief. If erroneous opinions of the Attorney General are not permitted to be judicially reviewed, this Court will have unwittingly set up a privileged sanctuary from which unrestrained public officials may operate with impunity.

"We respectfully submit that it behooves this Court at this time to rule in clear and unmistakable terms that the Attorney General is not to be permitted to operate a private court of last resort from which there is no appeal to the constitutional courts of this state."

We agree that if opinions of an Attorney General were permitted to attain the stature, and impact, attributed to them by respondent, mischief could result. We trust our holding today will disabuse the Bench, the Bar, and the public, of the notion that such result need be anticipated.

The essential problem presented in this case is one of resolving certain viable, but conflicting, factors: (1) that the parties have stipulated that the opinions issued by the Attorney General are injurious to respondent; (2) that § 27.040 requires the issuance of opinions by the Attorney General to designated persons upon request; (3) that public officials usually rely on such opinions and citizens often do so; and (4) that reliance on such opinions by the public is unfounded and sometimes quite unfortunate.

 We consider the opinions particularly unfortunate in this case, not only because they have harmed respondent, but, more importantly, because they have effectually, even though unintentionally, defeated the will of the General Assembly by expressing a belief that § 362.195, RSMo 1969, is unconstitutional. This statute was enacted in 1935. It may, or may not, be constitutional. In any event, a member of the Executive Department has no authority to *decide* the question.

■ We do not hold that a justiciable controversy can never arise from the giving of an opinion by an Attorney General.

However, we hold there is no justiciable controversy in this case, because the opinions issued by the Attorney General to the effect that § 362.195, supra, is unconstitutional, are entitled to no more weight than that given the opinion of any other competent attorney.

Accordingly, we believe, and hold: (1) that there exists a mere difference of opinion as to the constitutionality of § 362.195, RSMo 1969; (2) that no justiciable controversy is presented; and (3) that the trial court does not have jurisdiction to grant, and respondent does not have standing to seek, a declaratory judgment in this case.

The judgment is reversed and the cause remanded with directions to dismiss the case.

All concur.