Dear Mr. Antonio:
This letter is in response to your request for an official Attorney General opinion. I understand your questions to be as follows:
 1. What will be the county classification on January 1, 1981, of Audrain, New Madrid, and Scott Counties, which had assessed valuations in excess of $70,000,000 but not in excess of $125,000,000, for the years 1974 through 1979?
 2. What will be the county classification on January 1, 1981, of counties that have had assessed valuations in excess of $70,000,000 but less than $125,000,000 for the years 1975 through 1979 (i.e., Camden, Dunklin, Marion, Pike, Newton, Nodaway, Stoddard, and Randolph Counties)?
 3. If the assessed valuation of a county which is now second class is below $125,000,000 this year, has been below $125,000,000 each year previously and is not likely to reach $125,000,000 for many years in the future, will the county revert to being a third class county and, if so, when?
We note that, pursuant to Section 48.040, RSMo 1978, the State Auditor is required to ascertain if any county has changed classification, and, if so, to notify the appropriate elected county officials of such status change.
Section 8 of Article VI of the Constitution of Missouri provides that the counties of Missouri shall be organized and classified, and that: "the number of classes [of counties] shall not exceed four . . ." Sections 48.020 and 48.030, RSMo 1978, provided a basis for the organization and classification of Missouri counties into classes. The criteria for classification was the assessed valuation of the county, and the basic scheme was as follows: All counties with assessed valuations lower than $10,000,000 were fourth class counties; counties which maintained assessed valuations of at least $10,000,000 but less than $70,000,000 for five consecutive years became third class counties; counties which maintained assessed valuations of at least $70,000,000 but less than $125,000,000 for five consecutive years became second class counties unless the citizens of the county voted to remain in the third class; counties which maintained assessed valuations of at least $125,000,000 but less than $300,000,000 for five consecutive years automatically became second class counties; counties which maintained assessed valuations of at least $300,000,000 but less than $400,000,000 for three consecutive years became first class counties unless the voters of the county elected to remain second class counties; and all counties which maintained assessed valuations of at least $400,000,000 for three consecutive years automatically became first class counties. On December 29, 1978, the Missouri Supreme Court in Russell v. Callaway County,575 S.W.2d 193 (Mo. banc 1978) held that this statutory scheme, which permitted Callaway County to elect to remain a third class county after maintaining an assessed valuation of between $70,000,000 and $125,000,000 for five years, was unconstitutional because it, in effect, created a fifth class of counties, which is prohibited by Section 8 of Article VI of the Constitution of Missouri.
Thereafter, the Missouri General Assembly repealed Sections 48.020 and 48.030, RSMo 1978, and in lieu thereof, enacted Sections 48.020 and 48.030, RSMo Supp. 1979. These new sections became effective on September 28, 1979. The new scheme eliminated the option counties had under the repealed sections to remain second or third class counties. Under the new system, the counties were classified as follows: counties with assessed valuations lower than $10,000,000 are fourth class counties; counties which maintain assessed valuations of at least $10,000,000 and less than $125,000,000 for five consecutive years become third class counties; counties which maintain an assessed valuation of at least $125,000,000 but less than $400,000,000 for five consecutive years become second class counties; and counties which maintain assessed valuations of $400,000,000 and over for five consecutive years automatically become first class counties. We assume the constitutionality of Sections48.020 and 48.030, RSMo Supp. 1979.
The Supreme Court of Missouri in the case of GershmanInvestment Corporation v. Danforth, 517 S.W.2d 33, 35 (Mo. banc 1974) said:
 [A]n Attorney General may not declare a statute unconstitutional. This power is reserved to the courts by the Constitution. (Emphasis the court's)
There are certain counties in Missouri which attained the classification of second class counties on January 1, 1979. Johnson, Lafayette and Saline Counties maintained assessed valuations of at least $70,000,000 (but less than $125,000,000) for a period of five consecutive years, and actually became second class counties on January 1, 1979. Thereafter, on September 28, 1979, the new statutory scheme went into effect, under which a county becomes a third class county if it maintains an assessed valuation of at least $10,000,000 but less than $125,000,000 for five consecutive years. Thus, if the assessed valuation of Lafayette, Johnson and Saline Counties is now less than $125,000,000 and remains less than $125,000,000 for five consecutive years, then each such county will become a third class county. In assuming the constitutionality of Sections 48.020 and 48.030, RSMo Supp. 1979, we interpret those statutes to be prospective in effect, so that counties which changed classification before those statutes became effective will retain the classification they acquired until they fulfill the requirements of the statute now in effect to change classifications again. The explicit provision of Section 48.030, RSMo Supp. 1979, is that:
 After September 28, 1979, no county shall move from a lower class to a higher class or from a higher class to a lower class until the assessed valuation of the county is such as to place it in the other class for five successive years. . . .
Camden, Dunklin, Marion, Pike, Newton, Nodaway, Stoddard, and Randolph Counties had assessed valuations of at least $70,000,000 but less than $125,000,000 for the years 1975, 1976, 1977 and 1978, and 1979. In other words, they maintained assessed valuations of between $70,000,000 and $125,000,000 for four consecutive years prior to the statutory change. In 1979, the law governing classification of counties changed, so that a county does not become a second class county until it has maintained an assessed valuation of at least $125,000,000 for five consecutive years. These counties do not become second class counties under the old statutory scheme because they did not fulfill the requirements of the old statutory scheme before those statutes were repealed. These counties will not become second class counties unless and until they maintain assessed valuations of at least $125,000,000 and less than $400,000,000 for five consecutive years. Once again, the explicit provision of the statute now in effect is that no county will change classifications after September 28, 1979, "until the assessed valuation of the county is such as to place it in the other class for five successive years." Section 48.030, RSMo Supp. 1979.
Audrain, New Madrid and Scott Counties maintained assessed valuations in excess of $70,000,000 but less than $125,000,000 for the years 1974, 1975, 1976, 1977, 1978 and 1979. In other words, they maintained assessed valuations between $70,000,000 and $125,000,000 for five consecutive years prior to the effective date of the new classification statutes. However, the old statutory scheme, Section 48.030, RSMo 1978, provided that:
 The change from one classification to another shall become effective at the beginning of the county fiscal year following the next general election after the certification by the state equalizing agency for the required number of successive years that the county possesses an assessed valuation placing it in another class. If a general election is held between the date of the certification and the end of the current fiscal year, the change of classification shall not become effective until the beginning of the county fiscal year following the next succeeding general election. . . .
The date of classification change for these counties under those provisions was to have been January 1, 1981. Therefore, these counties have not yet become second class counties. Prior to the date that they were to have become second class counties, the requirements for becoming a second class county changed and those counties had not fulfilled the requirements now in effect for change in classification from third to second class county. If the old statute had provided that a county changed its classification immediately upon the expiration of the requisite five-year time period, then these counties would have become second class counties prior to September of 1979, the effective date of the new statutes. We assume the constitutionality of Section 48.030, RSMo Supp. 1979, and we reiterate that it provides that:
 After September 28, 1979, no county shall move from a lower class to a higher class or from a higher class to a lower class until the assessed valuation of the county is such as to place it in the other class for five successive years. . . .
On January 1, 1981, which is after September 28, 1979, none of these counties shall have had the assessed valuation now required such as to place it in the second class for five successive years. Audrain, New Madrid, and Scott Counties will remain third class counties on January 1, 1981, and will continue to be third class counties until they maintain assessed valuations of between $125,000,000 and $400,000,000 for five successive years.
Respectfully,
 JOHN ASHCROFT Attorney General